IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| PAUL A. ROSBERG, | |
| Plaintiff, | 8:24-CV-40 |
| vs. | MEMORANDUM AND ORDER |
| STATE OF NEBRASKA, et al., | |
| Defendants. | |

The plaintiff, Paul Rosberg, is a non-prisoner proceeding without payment of fees. The Court now conducts an initial review of the plaintiff's complaint, filing 1, to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2). The Court is required to dismiss a complaint, or any portion of it, that states a frivolous or malicious claim, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

I. SUMMARY OF COMPLAINT

The plaintiff was a party to a state court proceeding dissolving his marriage, in which the state court ordered a property settlement and child custody arrangement. *See* filing 1 at 3, 5, 7. He's also been party to lawsuits against some or all of the state court judges involved.[1]

---

[1] To say that the plaintiff has raised these arguments before, and had them repeatedly rejected, would be an understatement. *See, e.g.*, *Rosberg v. Nebraska*, No. 8:23-CV-38, 2023 WL 3625288 (D. Neb. May 24, 2023); *Rosberg v. Johnson*, No. 8:22-CV-384, 2023 WL 3600895 (D. Neb. May 23, 2023), *aff'd*, No. 23-3653, 2024 WL 2813784 (8th Cir. 2024); *Rosberg v. Kube*, No. A-21-688, 2022 WL 2204180 (Neb. Ct. App. June 21, 2022); *Rosberg v. Rosberg*, No. 8:21-

The underlying theory of the plaintiff's complaint is that he was entitled to a trial by jury in his dissolution proceeding, but that right was denied. *See* filing 1 at 4. His complaint essentially alleges his history of unsuccessfully asserting his purported rights in different state court proceedings. *See* filing 1.

More specifically, the plaintiff alleges that he was unlawfully denied his right to a jury by Judge Paul Vaughan in his dissolution proceeding. *See* filing 1 at 8-9; *see also Rosberg v. Rosberg*, 2019 WL 1906234, at *3. Judge Vaughan, along with Judges Mark Kozisek, James Kube, and Mark Johnson, are alleged to have violated the plaintiff's rights by assuming jurisdiction in "chancery court" over what the plaintiff claims were cases in "common law jurisdiction." *See* filing 1. By denying him his constitutional rights, the plaintiff asserts that these judges engaged in insurrection against the United States, meaning that they're barred from holding office by Section 3 of the Fourteenth Amendment. Filing 1 at 4. In addition, the plaintiff believes they deprived him of his rights by failing to recuse themselves, even though he's sued them and they're biased against him. *See* filing 1 at 6-7.

Judge Kube is also accused of having colluded with the plaintiff's ex-wife, and of having him jailed for failing to appear in court when, according to the plaintiff, he hadn't been served with notice of the hearing. Filing 1 at 8-13. Judge Johnson is being sued for dismissing the plaintiff's state court lawsuit against Judge Kube, despite also being sued by the plaintiff. Filing 1 at 13-14; filing 1-1 at 7-8. Judge Johnson also dismissed other claims brought by the

---

CV-152, 2021 WL 2210602 (D. Neb. June 1, 2021); *Rosberg v. Rosberg*, No. A-18-790, 2019 WL 5151482 (Neb. Ct. App. Oct. 15, 2019); *Rosberg v. Rosberg*, No. A-17-1229, 2019 WL 1914915 (Neb. Ct. App. Apr. 30, 2019); *Rosberg v. Rosberg*, No. A-17-909, 2019 WL 1906234 (Neb. Ct. App. Apr. 30, 2019); *Rosberg v. Nebraska*, No. 8:17-CV-80, 2017 WL 1497884 (D. Neb. Apr. 26, 2017).

plaintiff, as a sanction for frivolous and vexatious litigation. Filing 1-1 at 7. And in a different case, Judge Kozisek is accused of denying the plaintiff his right to a hearing by dismissing his case without one. Filing 1 at 15; filing 1-1 at 12. The State of Nebraska is also a defendant, because all four judges were employees of the state. Filing 1 at 1.

All of this, the plaintiff alleges, is treason, because it "is giving aid and comfort to the deep state or communist China which is in control of our government." Filing 1 at 16. As relief, he demands the following:

- Money damages for the violation of his rights and denial of visitation,
- An order compelling the State of Nebraska to provide the plaintiff with a jury trial in each and every one of the state court cases he's complaining about,
- An order barring Judges Kube, Johnson, Vaughan and Kozisek from holding any office in the United States "because of their treasonous acts against the Nebraska people."

Filing 1 at 17-18.

## II. STANDARD OF REVIEW

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v.*

3

*Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A *pro se* complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (cleaned up). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004). However, even *pro se* complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

### III. DISCUSSION

To begin with, it's not clear what cause of action the plaintiff is even attempting to allege. He invokes the Declaratory Judgment Act, 28 U.S.C. § 2201, filing 1 at 2, which provides in relevant part:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

*Id.* "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any

adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202.

But the Declaratory Judgment Act does not provide a means for standing or relief. *Mitchell v. Dakota Cnty. Soc. Servs.*, 959 F.3d 887, 897 n.2 (8th Cir. 2020). The operation of the Declaratory Judgment Act is procedural only, and does not expand the jurisdiction of federal courts. *Yeransian v. B. Riley FBR, Inc.*, 984 F.3d 633, 637 (8th Cir. 2021) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)). Nor is the Declaratory Judgment Act sufficient when the plaintiff is only really asking for a "declaration" that he's entitled to money damages and equitable relief. *See* filing 1 at 17-18.

But the plaintiff's underlying claims seem to allege that his federal constitutional rights were violated. *See* filing 1, *passim*. Title 42 of the United States Code, section 1983 allows individuals to bring suit against persons who, under color of state law, have caused them to be "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

In addition, the plaintiff's claims for prospective injunctive relief at least arguably imply the doctrine set forth in *Ex Parte Young*, 209 U.S. 123 (1908), which is an exception that abrogates a State's sovereign immunity protection. It provides that state officials may be sued in their official capacities for prospective injunctive relief to prevent future federal constitutional or statutory violations. *Id.* "'Prospective relief' is defined broadly to include all relief other than compensatory damages." *Gavin v. Branstad*, 122 F.3d 1081,

1084 (8th Cir. 1997). To determine whether a plaintiff has alleged a proper *Ex Parte Young* claim, the federal court "need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., concurring)).

The plaintiff does not expressly invoke either § 1983 or *Ex Parte Young*, but the Court will liberally construe his pleading as asserting such claims. They are without merit regardless.

1. ELEVENTH AMENDMENT IMMUNITY

First, to the extent that the plaintiff is suing the State of Nebraska and state officials in their official capacities for money damages, they are protected by Eleventh Amendment immunity.

The Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities, and an employee of a state sued in the employee's official capacity. *See, e.g.*, *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446-47 (8th Cir. 1995). Any award of retroactive monetary relief payable by the state, including for damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress. *See, e.g.*, *Dover Elevator Co.*, 64 F.3d at 447; *Nevels v. Hanlon*, 656 F.2d 372, 377-78 (8th Cir. 1981). And a suit against a public employee in his or her official capacity is merely a suit against the public employer. *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999).

There is nothing in the record before the Court showing that the State of Nebraska waived, or that Congress overrode, sovereign immunity in this

matter with respect to Plaintiff's section 1983 claim. The plaintiff's complaint names the State of Nebraska as a defendant, and state judges as defendants for actions taken under color of state law. To the extent that the complaint seeks money damages from the State of Nebraska, the Eleventh Amendment bars those claims.

## 2. JUDICIAL IMMUNITY

Nor can the plaintiff sue the defendant judges in their individual capacities. A judge is immune from suit, including suits brought under § 1983 to recover for alleged deprivations of civil rights, in all but two narrow sets of circumstances. *Schottel v. Young,* 687 F.3d 370, 373 (8th Cir. 2012).

First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. *Id*. An act is judicial if it is one normally performed by a judge and if the complaining party is dealing with the judge in his judicial capacity. *Id*. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction. *Id*.

Although the plaintiff suggests that the judges in his various cases acted in the absence of jurisdiction, *e.g.* filing 1 at 11, 18, his allegations establish otherwise. A judge's jurisdiction is construed broadly where the issue is judicial immunity. *Id*. (citing *Stump v. Sparkman,* 435 U.S. 349, 362 (1978)). And a judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority—rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction, and an action taken in the very aid of the judge's jurisdiction over a matter before him cannot be said to have been taken in the absence of jurisdiction. *Id*. (citing *Stump,* 435 U.S. at 356-57; *Mireles v. Waco,* 502 U.S. 9, 11-12 (1991)).

All of the allegedly extrajurisdictional acts taken by the judges in the plaintiff's cases occurred as part of actions over which the state courts had jurisdiction. *See, e.g., Liles v. Reagan,* 804 F.2d 493, 495 (8th Cir. 1986). Accordingly, those acts were judicial in nature and not taken in the complete absence of all jurisdiction, entitling the defendant judges to judicial immunity.

### 3. U.S. CONST., AMEND. XIV, § 3

The plaintiff also suggests that the defendant judges should be or are barred from holding office by the insurrection clause of the Fourteenth Amendment. Filing 1 at 2-3 (citing U.S. Const., Amend. XIV, § 3). That clause provides in relevant part that

> [n]o person shall . . . hold any office . . . under any state, who, having previously taken an oath . . . as an executive or judicial officer of any state, to support the Constitution of the United States, shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof.

U.S. Const., Amend. XIV, § 3. There is no colorable claim that the defendant judges have engaged in insurrection or rebellion against the United States. *See United States v. Griffith,* No. 21-CR-244, 2023 WL 2043223, at *3 (D.D.C. Feb. 16, 2023) ("insurrection" requires violent revolt against civil authority). But even if there was a viable argument to be made, this Court lacks authority to enforce that provision in a civil action.

Instead, federal enforcement of § 3 is left to Congress. *See Trump v. Anderson,* 601 U.S. 100, 114 (2024).

> Shortly after ratification of the Amendment, Congress enacted the Enforcement Act of 1870. That Act authorized federal district attorneys to bring civil actions in federal court to remove anyone holding nonlegislative office—federal or state—in violation of Section 3, and made holding or attempting to hold office in violation of Section 3 a federal crime. In the years following ratification, the House and Senate exercised their unique powers under Article I to adjudicate challenges contending that certain prospective or sitting Members could not take or retain their seats due to Section 3. And the Confiscation Act of 1862, which predated Section 3, effectively provided an additional procedure for enforcing disqualification. That law made engaging in insurrection or rebellion, among other acts, a federal crime punishable by disqualification from holding office under the United States. A successor to those provisions remains on the books today. See 18 U.S.C. § 2383.

*Trump*, 601 U.S. at 114-15. But it's well-established that § 2383 provides no private right of action. *See Mirarchi v. U.S. Exec. Branch of Gov't*, No. 23-CV-1549, 2023 WL 5598454, at *3 (E.D. Pa. Aug. 29, 2023), *aff'd*, No. 23-2673, 2023 WL 8179275 (3d Cir. Nov. 27, 2023) (collecting cases); *see also, e.g.*, *Chen ex rel. V.D. v. Lester*, 364 F. App'x 531, 536 (11th Cir. 2010); *Alter v. Trump*, No. 24-CV-478, 2024 WL 2077547 (D.D.C. May 9, 2024), *aff'd,* No. 24-5132, 2024 WL 4034461 (D.C. Cir. Sept. 4, 2024), *cert. denied,* 145 S. Ct. 1140 (2025); *Watzke v. Watzke*, No. 23-CV-44, 2023 WL 11891916, at *2 (M.D. Fla. Jan. 26, 2023); *Petty v. Bono*, No. 22-CV-620, 2023 WL 4060091, at *3 (N.D.N.Y. Mar. 29, 2023) (collecting cases); *Cassaday v. Trump*, No. 22-CV-682, 2022 WL 3082464, at *4

9

(W.D. Mich. Aug. 3, 2022); *Carmichael v. Cnty. of San Diego*, No. 19-CV-1750, 2019 WL 6716728, at *5 (S.D. Cal. Dec. 10, 2019) (collecting cases); *Uzomba v. United States*, No. 19-CV-302, 2019 WL 13212717, at *2 (N.D. Ga. Mar. 27, 2019); *Quang Thai v. Mirad Fin. Grp.*, No. 17-CV-9217, 2018 WL 4732214, at *4 (C.D. Cal. July 30, 2018); *Sharp v. Grisham*, No. 19-CV-986, 2019 WL 6717182, at *2 (D.N.M. Dec. 10, 2019); *Stevens v. Vernal City*, No. 14-CV-801, 2015 WL 1809655, at *3 (D. Utah Apr. 21, 2015).

States retain concurrent authority to enforce § 3 as to state officials, *see Trump*, 601 U.S. at 110, but this Court cannot act for the State of Nebraska. In the absence of any other legislation by Congress to enforce § 3, *see Trump*, 601 U.S. at 115, this Court has no authority to disqualify state or federal officials pursuant to § 3.

### 4. *ROOKER-FELDMAN*

The Court is also divested of jurisdiction over the plaintiff's claims by the *Rooker-Feldman* doctrine, which prohibits lower federal courts from exercising appellate review of state court judgments. *See Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 416 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 482 (1983). The *Rooker-Feldman* doctrine generally applies where a case is brought by the losing party in a state court action, complaining of injuries caused by the state court's judgment rendered before the district court proceedings commenced, and inviting the district court to review and reject that judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Ultimately, "no matter how erroneous or unconstitutional the state court judgment may be, the Supreme Court of the United States is the only federal court that could have jurisdiction to review a state court judgment." *Brokaw v. Weaver*, 305 F.3d 660, 664 (7th Cir. 2002) (cleaned up).

10

*Rooker-Feldman* is, however, a narrow doctrine that does not extend to a case merely "because a party attempts to litigate in federal court a matter previously litigated in state court." *Exxon*, 544 U.S. at 293. Only where the alleged injury for which a plaintiff seeks redress stems directly from the state court judgment itself, rather than from some separate injury caused by the defendant, does the federal court have no jurisdiction to review. *Skit Intern., Ltd. v. DAC Techs. of Ark., Inc.*, 487 F.3d 1154, 1157 (8th Cir. 2007). Therefore, the crucial inquiry in determining if a claim is so inextricably intertwined with a state judgment that it cannot be heard by a federal court has been explained as hinging upon a determination of "whether the federal plaintiff seeks to set aside a state court judgment or whether he is, in fact, presenting an independent claim." *Brokaw*, 305 F.3d at 664-65 (citation omitted).

The plaintiff is familiar with *Rooker-Feldman*. See *Rosberg v. Nebraska*, 2023 WL 3625288, at *2; *Rosberg v. Nebraska*, 2017 WL 1497884, at *2. And here, he runs afoul of it again. All of the plaintiff's alleged injuries—infringed constitutional rights, denial of child custody, deprivation of property—arise directly from the state courts' judgments. His remedy is to appeal to the state appellate courts and then petition for certiorari in the United States Supreme Court, not attack those judgments in federal district court.

### 5. RIGHT TO JURY TRIAL

The plaintiff's underlying legal theory—that he was denied a right to jury trial—is also misplaced. The plaintiff insists that the defendant judges are judges of the "chancery court" who should not have presided over cases he filed on the "common law side of the District Court." Filing 1 at 3. He points to Neb. Const. art. V, § 9—"[t]he district courts shall have both chancery and common law jurisdiction"—and interprets that provision to mean that "in the District

11

Courts in Nebraska there are two kinds of courts with two types of jurisdictions." Filing 1 at 4.

That's the opposite of what Neb. Const. art. V, § 9 means. What it means—and what it clearly says—is that there's *one* kind of district court in Nebraska, with both common-law and chancery (*i.e.* equity) jurisdiction. *See Kotrous v. Zerbe*, 846 N.W.2d 122, 125 (Neb. 2014). Dissolution of marriage cases in Nebraska are indisputably equitable in nature. *Marshall v. Marshall*, 902 N.W.2d 223, 235 (Neb. 2017). And there is no right to a jury trial in an equity action under the Nebraska Constitution, *see Eihusen v. Eihusen*, 723 N.W.2d 60, 63 (Neb. 2006), or the U.S. Constitution, *see Parsons v. Bedford, Breedlove & Robeson*, 28 U.S. 433, 446-47 (1830).[2] Nor is the state or federal right to a jury trial offended if a meritless claim is not allowed to proceed to a jury. *See Weisgram v. Marley Co.*, 528 U.S. 440, 454 n.10 (2000); *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 250 (1940); *Neely v. Martin K. Eby Const. Co.*, 386 U.S. 317, 321, 87 S. Ct. 1072, 1076, 18 L. Ed. 2d 75 (1967); *Souffront v. La Compagnie Des Sucreries De Porto Rico*, 217 U.S. 475, 487 (1910); *Fid. & Deposit Co. of Md. v. United States*, 187 U.S. 315, 320 (1902); *Harris v. Interstate Brands Corp.*, 348 F.3d 761, 762 (8th Cir. 2003); *Eden v. Klaas*, 85 N.W.2d 643, 646 (Neb. 1957); *Healy v. Metro. Utils. Dist.*, 62 N.W.2d 543, 547 (Neb. 1954); *Smith v. Epstein Realty Co.*, 277 N.W. 427, 429 (Neb. 1938).

---

[2] The plaintiff insists, "I know there is no right to a jury trial in an equitable action. I filed, or transferred, my cases to the common law side of the District Court; so in that court I have a right to a trial by jury under the rules of common law, not equity or chancery rules." Filing 1 at 17. That's not how it works: Whether an action is equitable is determined from the averments of the pleadings and the relief sought, not the say-so of the plaintiff. *See Schmid v. Simmons*, 970 N.W.2d 735, 745 (Neb. 2022).

The plaintiff insists that Nebraska law on this point is "non-binding" because "the Federal law or the 7th Amendment clearly states to the contrary." Filing 1 at 17. It does not. The Supreme Court has repeatedly rejected that argument, holding that "cases brought in state courts are *never* subject to the Seventh Amendment, no matter the nature of the claim." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 79 n.5 (1989); *see also Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 432 (1996); *Walker v. Sauvinet*, 92 U.S. 90, 92 (1875); *Edwards v. Elliott*, 88 U.S. 532, 557 (1874). The Seventh Amendment applies neither in state court nor in equity actions. *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 719 (1999).

### 6. DUE PROCESS

Although not a central claim of the plaintiff's complaint, he also suggests that he was denied due process when some of the defendant judges refused to recuse themselves after he sued them in federal court. Filing 1 at 7. But it's improper for a litigant to deliberately create the ground on which he seeks the recusal of the judge assigned to his case. *Sullivan v. Conway*, 157 F.3d 1092, 1096 (7th Cir. 1998); *U.S. v. Owens*, 902 F.2d 1154, 1156 (4th Cir. 1990). Requiring disqualification every time a litigant sues a judge would allow litigants to improperly "judge shop." *In re Trader*, 419 F. App'x 170, 170 (3d Cir. 2011); *see also U.S. v. Pryor*, 960 F.2d 1, 3 (1st Cir. 1992); *Azubuko v. Royal*, 443 F.3d 302, 304 (3d Cir. 2006); *U.S. v. Studley*, 783 F.2d 934, 940 (9th Cir. 1986); *U.S. v. Grismore*, 564 F.2d 929, 933 (10th Cir. 1977); *Jones v. City of Buffalo*, 867 F. Supp. 1155, 1163 (W.D.N.Y. 1994); *cf. Proctor v. Engstrom*, 95 F. App'x 192, 194 (8th Cir. 2004).

Nor do the plaintiff's more general claims of bias bear scrutiny. Most of them are evidenced by the courts' consistent refusal to provide the plaintiff

with a jury trial, which wasn't wrong, as discussed above. Instances in which the judges dismissed the plaintiff's arguments or expressed frustration with him are also insufficient to establish the kind of bias that would require disqualification. *See*, *e.g.*, *Jones v. Luebbers,* 359 F.3d 1005, 1015 (8th Cir. 2004). The Court starts with a presumption of honesty and integrity in those serving as adjudicators, and finds nothing alleged by the plaintiff to overcome that presumption or establish a "constitutionally intolerable probability of actual bias." *See In re Morgan,* 573 F.3d 615, 624 (8th Cir. 2009).

### 7. DOMESTIC RELATIONS EXCEPTION

Finally, even if the plaintiff had presented a facially colorable claim over which the Court even arguably had jurisdiction, the Court would be required to abstain.

> The domestic relations exception . . . divests the federal courts of jurisdiction over any action for which the subject is a divorce, allowance of alimony, or child custody. In addition . . . when a cause of action closely relates to but does not precisely fit into the contours of an action for divorce, alimony or child custody, federal courts generally will abstain from exercising jurisdiction.

*Kahn v. Kahn,* 21 F.3d 859, 861 (8th Cir. 1994) (citing *Ankenbrandt v. Richards,* 504 U.S. 689 (1992)). The plaintiff's claims clearly relate to the issues arising from the plaintiff's divorce proceeding, and are effectively an attempt to force the state courts to relitigate them. They are inherently state court matters that do not belong in federal court.

## IV. CONCLUSION

The Court lacks jurisdiction over the plaintiff's claims, and to the extent jurisdiction can be found the Court is required to abstain from determining them. In addition, the plaintiff's complaint fails to state a claim upon which relief can be granted, and is subject to preservice dismissal under § 1915(e)(2).

Moreover, the plaintiff's relentless reassertion of the same frivolous claims in state and federal court will no longer be tolerated.

The Court has authority to control and manage matters pending before it. This includes trial and pre-trial actions. The need for such control bears noting. First, Rule 1 of the Federal Rules of Civil Procedure provides that the rules shall be construed to secure the just, speedy, and inexpensive determination of every action. Three fundamental goals underlie this mandate; maintaining the quality of justice, avoiding delay, and improving the efficiency of dispute resolution. In order to secure these values, we must recognize that judicial resources are limited in the short run and need to be protected from wasteful consumption. Frivolous, bad faith claims consume a significant amount of judicial resources, diverting the time and energy of the judiciary away from processing good faith claims.

The most apparent effect of excessive litigation is the imposition of unnecessary burdens on, and the useless consumption of, court resources. As caseloads increase, courts have less time to devote to each case. A lack of adequate time for reflection threatens the quality of justice. Second, long delays in adjudication create public dissatisfaction and frustration with the

> courts. Such delays also result in the unfortunate continuation of wrongs and injustices while the cases that would correct them sit on court calendars. Third, abusive litigation results in prolonged, repetitive harassment of defendants causing frustration and often extraordinary and unreasonable expenditures of time and money defending against unfounded claims.
>
> Defendants have a right to be free from harassing, abusive, and meritless litigation. Federal courts have a clear obligation to exercise their authority to protect litigants from such behavior. The Court may, in its discretion, place reasonable restrictions on any litigant who files non-meritorious actions for obviously malicious purposes and who generally abuses judicial process. These restrictions may be directed to provide limitations or conditions on the filing of future suits.

*In re Tyler*, 839 F.2d 1290, 1292–93 (8th Cir. 1988) (quoting *Colorado v. Carter*, 678 F. Supp. 1484, 1486 (D. Colo. 1986)) (cleaned up).

It is long past time for the plaintiff to recognize that his legal claims are without merit. On or before July 28, 2025, the plaintiff shall respond and show cause why the Court should not enjoin him from filing further *pro se* cases relating to the state court proceedings arising from the dissolution of his marriage—including suits against the judges who've presided over those proceedings, based on their conduct therein—without first seeking leave of court. *See In re Pointer*, 345 F. App'x 204 (8th Cir. 2009) (pre-filing injunction requires notice and opportunity to respond). If the plaintiff does not respond, such restrictions will be imposed without further notice.

IT IS ORDERED:

1. The plaintiff's complaint is dismissed.

2. Leave to amend the complaint will not be granted because such amendment would be futile.

3. On or before July 28, 2025, the plaintiff shall show cause why he should not be enjoined from filing further *pro se* cases in the United States District Court for the District of Nebraska regarding the state court proceedings dissolving his marriage without first seeking leave of court.

4. The Clerk of the Court shall set a show cause deadline for July 28, 2025.

Dated this 7th day of July, 2025.

BY THE COURT:

*John M. Gerrard*

John M. Gerrard
Senior United States District Judge